Groton *vs.* The Inhabitants of Waldoborough.

Money paid to a town for *the office of Constable,* it having been put at auction
prior to the choice, cannot be recovered back. In such case, the rule of law,
*in pari delictos, potior est conditio defendentis,* well applies.

In this action, which was *assumpsit,* the plaintiff sought to re-
cover back the sum of $33,29, which he had paid to the defend-
ants *for the office of Constable* for three years — the office hav-
ing been put up at auction, and bid off, prior to the election. In
the Court of Common Pleas a nonsuit was ordered, and the case
was brought upon exceptions.

*Groton,* for the plaintiff, cited *Lunt's case,* 6 *Greenl.* 412 ;
*Sumner* v. *The first Parish in Dorchester,* 4 *Pick.* 361 ; *Ames-
bury Cotton and Woollen Manuf. Co.* v. *The Inhabitants of
Amesbury,* 17 *Mass.* 461 ; 2 *Barnw. & Cress.* 729 ; *Chitty on
Cont.* 191.

*Reed,* for the defendants.

WESTON J. delivered the opinion of the Court.

It is made by law the duty of towns to choose constables ; but they have no right to sell the office. It is to be presumed that the citizens will promote such men to office, as are best qualified to discharge the duties. If they are allowed to be the subjects of sale, there would be great danger that purchasers would reimburse themselves by oppression and extortion ; and that fidelity and integrity would be less regarded than gain. Indeed, men of elevated minds and correct principles, could never be reconciled to this mode of obtaining office. The counsel for the defendants at once concedes, that no action could be maintained by the town for the stipulated price. But that has been paid for three successive years ; and this action is brought to reclaim the money. Admitting the unlawfulness of the sale to its fullest extent, and that it is directly against public policy to sustain it, we can perceive no reason why the buyer is not to be regarded as guilty as the seller. He participated equally in the unlawful transaction.

The rule of law, *in pari delicto, potior est conditio defendentis*, is well established. *Hawson* v. *Hancock*, 8 *T. R.* 575. *Vandyck et al.* v. *Hewitt*, 1 *East*, 98, *McCullum* v. *Gourlay*, 8 *Johns.* 147, and *Worcester* v. *Eaton*, 11 *Mass.* 368, with many others which might be cited, are authorities to this point. There are certain cases, where the parties are not considered equally guilty, or where one of them has greater need of protection, where payments may be reclaimed ; these cases, either not falling within the rule, or forming exceptions to it. These distinctions are stated by *Lord Mansfield* in *Smith* v. *Bromley*, cited in 2 *Douglas*, 696, and in *Browning* v. *Morris, Cowp.* 792, in which he says, that if the money has been paid in pursuance of an act immoral in itself, or in violation of the general laws of public policy, the party paying can have no action to reclaim it. But that if laws are made for the protection of one set of men against another, and money is demanded and paid, in violation of such laws, it may be recovered back. The case before us clearly belongs to the former, and not to the latter class.

There are cases of payment upon compulsion of money unlawfully demanded, where no guilt is imputable to the party paying. He merely submits to exactions which, although unlawful in their

origin, are enforced by the forms of law. As where he is called upon by the collector for the payment of taxes, for which he is not legally liable, and they are collected by distress, or by payment to avoid distress, the party paying may recover the amount. Of this character were the cases of *Amesbury Woollen and Cotton Co.* v. *Inhabitants of Amesbury,* 17 *Mass.* 461, and *Sumner* v. *The First Parish in Dorchester,* 4 *Pick.* 361. The recovery of money paid to another, not entitled to receive it, is sometimes resisted upon the ground, that it was paid voluntarily. This has been repelled by showing a moral, if not a legal compulsion. Thus in *Morgan* v. *Palmer,* 2 *Barnw. & Cress.* 729, cited in the argument, the plaintiff, a publican, applied to the defendant, the *Mayor of Yarmouth,* for a renewal of his license, for which he was required to pay a fee, not warranted by law. This was held not to have been a voluntary payment, the plaintiff being under the necessity of having his license renewed, in order to carry on his ordinary business.

The plaintiff was under no necessity of being constable. He might be liable to a penalty for not serving the first year he was chosen, but he was not compellable to pay the purchase money, which he might have successfully resisted. Indeed, it may be questionable, whether he would have been liable to a fine, if he had refused to serve the first year ; as his election, instead of being absolute, was in the nature of a proposition from the town, that he might have the office, if he would pay for it the sum, which *Sproul* had agreed to pay, and do the business of the town without compensation. The law will, in a case like the present, lend its aid to neither party, neither being entitled to special favor.

*Nonsuit confirmed.*